UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MAUREN JEROME ASHFORD; DENNIS
PARK; RAYMOND C. GEORGE; ISSAC
McDONALD; and MARK SWIFT,

                         Plaintiffs,

          - against-                                9:08-CV-1036 (LEK/RFT)

ELIOT SPITZER; *et al.*,

                    Defendants.

_____


## MEMORANDUM-DECISION AND ORDER

          Plaintiffs Mauren Jerome Ashford, Dennis Park, Raymond C. George, Issac McDonald, and

Mark Swift (collectively, "Plaintiffs"), proceeding *pro se*, bring this civil rights action, pursuant to 42

U.S.C. § 1983, alleging violations of their constitutional rights stemming from the enactment of the Sex

Offender Management and Treatment Act ("SOMA") and the administration of the New York State

Department of Correctional Services' ("DOCS") Sex Offender Counseling and Treatment Program

("SOCTP") at Shawangunk Correctional Facility.  Dkt. No. 1 ("Compl.").  This action was purportedly

commenced as a class action by twenty-six plaintiffs.  By Order of District Judge David N. Hurd filed

January 13, 2009, Plaintiffs' request for Class Certification was denied.[1]  Dkt. No. 48 at 5.  For various

reasons, only the five Plaintiffs remain in this action.

          Defendants have filed a Motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the

Federal Rules of Civil Procedure.  Dkt. No. 115 ("Defendants' Motion"); see also Dkt. No. 131 (Order

granting Defendants Spitzer, O'Connell, and Bluth to join in the previously filed Motion to dismiss).

_____

          [1]  This action was reassigned to the undersigned by Order of Judge Hurd dated June 8, 2009
because this Court had a related case.

Plaintiffs have not responded to Defendants' Motion. For the reasons that follow, Defendants' Motion is granted in part and denied in part. The Court has also *sua sponte* reviewed claims set forth in the Complaint which Defendants have not addressed in their Motion to dismiss, and, as will be set forth below, some of those claims will also be dismissed.

## I.    BACKGROUND

The following information was derived from the allegations in Plaintiffs' Complaint, which must be taken as true for the purpose of addressing the instant Motion. Dkt. No. 1 ("Compl."); see infra, Section II; Port Washington Teachers Ass'n v. Bd. of Educ. of Port Washington Union Free Sch. Dist., 478 F.3d 494, 498 (2d Cir.2007).

According to the DOCS website, at the time period relevant in the Complaint: (1) Plaintiff Ashford was serving an indeterminate sentence of incarceration for convictions of Sodomy in the First Degree, Attempted Rape in the First Degree, Sodomy in the Second Degree, and Sexual Abuse in the First Degree; (2) Plaintiff Park was serving an indeterminate sentence of incarceration for a conviction of Rape in the First Degree; (3) Plaintiff George was serving an indeterminate sentence of incarceration for convictions of Rape in the Second Degree, Attempted Rape in the First Degree, Criminal Sale of Marijuana in the Second Degree, and Manslaughter in the Second Degree; (4) Plaintiff McDonald was serving an indeterminate sentence of incarceration for a conviction of Rape in the Second Degree; and (5) Plaintiff Swift was serving an indeterminate sentence of incarceration for a conviction of Rape in the First Degree. See N.Y. DOCS Inmate Locator Website, *available at* http://nysdocslookup.docs.state.ny.us (information for inmates Ashford, Park, George, McDonald, and Swift, DIN ## 93B2332, 03B0518, 03B0144, 03B2885, and 05B3040, respectively) (last visited Dec. 8,

2010).[2]

In January 2008, Plaintiffs allege that they were transferred, without notice, from their respective correctional facilities to Shawangunk Correctional Facility ("Shawangunk"). Compl. ¶ 28. A "SuperMaximum Security Facility," Shawangunk "is designated to house the 'Most Dangerous Prisoners'" in DOCS custody. Id. Upon arrival at Shawangunk, Plaintiffs were informed that they were transferred to Shawangunk because they had been designated as "sex offenders" based upon information contained in their Pre-Sentence Reports or their inmate records, which indicated that they had been involved in misconduct of a sexual nature. Id. ¶ 29. Plaintiffs were advised that they had been recommended for placement in the SOCTP that was being established in Shawangunk. Id. ¶ 30. Plaintiffs were not given the option of refusing to be transferred to Shawangunk or participate in the SOCTP. Id. ¶ 31.

Plaintiffs were housed in the "B-2" block at Shawangunk with the general population inmates. Compl. ¶ 32. While housed in B-2, Plaintiffs allege that the drinking water in the sinks was badly contaminated, and the kitchen staff tampered with their food because they did not like inmates classified as sex offenders. Id. at 3 and ¶¶ 112-113.

The general population inmates in B-2 did not want to be housed with inmates labeled as "sex offenders." Compl. ¶ 32. As a result of the hostility displayed by the general population inmates, Plaintiffs were afraid to, and therefore prevented from, using the common recreation areas available to

---

[2]  The Court takes judicial notice of the information contained on the DOCS website as such public information is "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." FED. R. EVID. 201(b)(2); Marcus v. AT&T Corp., 938 F. Supp. 1158, 1164-65 (S.D.N.Y. 1996) (noting that a court may take judicial notice of public documents, even if not included in or attached to a complaint).

B-2 inmates. Id. ¶ 34. Plaintiffs received "threats of harm and physical injury" from inmates housed in the nearby B-1 housing block, the Close Supervision Unit ("CSU"). Id. ¶ 35. The B-1 inmates threatened "to take 'Target Practice' on plaintiffs when traveling throughout the facility." Id. On or about February 13, 2008, one of the Plaintiffs was assaulted by inmates from the B-1 CSU because he was a sex offender; the inmate suffered a knife-cut to his face.[3] Compl. ¶ 37. The injured Plaintiff was placed in the Involuntary Protective Custody block for his own protection. Id. ¶ 38. On or about February 20, 2008, Larry Davis, an inmate, was fatally stabbed while trying to defend an inmate labeled as a "sex offender" who was being attacked by an inmate from the CSU. Id. ¶ 39. As a result of Davis' "murder," several Plaintiffs signed out of the SOCTP for fear of being injured by inmates in the B-1 CSU. Id. As a result of not completing the SOCTP, Plaintiffs who signed out of the SOCTP were: (1) denied their good time credits; (2) required to serve their maximum term of incarceration; and (3) told by Shawangunk staff that they would face civil commitment when their maximum term of incarceration expired. Id. ¶¶ 42-43.

Additionally, correctional staff told Plaintiffs that they did not want either the SOCTP or sex offenders at Shawangunk. Id. ¶ 33. Plaintiffs complain that, because they were designated as sex offenders, they were subjected to threats, intimidation, and discrimination by Shawangunk staff. Id. ¶ 36.

In March 2008, Plaintiffs were told that the SOCTP Program at Shawangunk was ready for operation and that Plaintiffs would be required to sign "Waiver Forms" prior to entering the SOCTP. Compl. ¶ 47. If Plaintiffs failed to sign the waiver forms, or complete SOCTP, they would lose good

---

[3] The Complaint does not identify which Plaintiff was cut with a knife, or whether the injured inmate is one of the Plaintiffs remaining in this action.

time credits; be ineligible for parole, and hence be required to served their maximum term of incarceration; and be subject to civil commitment upon their release from incarceration. Id. Plaintiffs were also advised that they would be required to verbally admit to information regarding sexual misconduct that was included in their Pre-Sentence Reports, irrespective of whether they were convicted of those crimes or not. Id. ¶¶ 48, 60. If they failed to do so, they would be removed from the SOCTP and face the consequences of such removal, namely loss of good time credits, ineligibility for parole, and civil confinement upon their release from incarceration. Id. ¶ 48.

Plaintiffs allege that the SOCTP at Shawangunk was run without a set curriculum; that staff was not properly trained or qualified to serve as counselors for the SOCTP; inmate coordinators were not qualified to serve in that capacity; and some inmates received preferential treatment from staff if they elicited information from other participants which could result in new criminal charges being lodged against those other participants. Compl. ¶¶ 50-59. Certain inmates also received preferential treatment for job assignment within SOCTP, causing conflict among the participants and negatively impacting the "therapeutic environment." Id. ¶ 52. Plaintiffs also allege that the Shawangunk Defendants discriminated against them on the basis of their being designated "sex offenders." Compl. at 2.

In implementing the SOCTP at Shawangunk, Defendants were acting in accordance with SOMA, which was signed into law by Defendant Elliot Spitzer as part of New York Mental Hygiene Law, Article 10. Compl. ¶ 61. Plaintiffs allege that SOMA created "a new legal regime for 'Sex Offenders Requiring Civil Commitment or Supervision.'" Id. Plaintiffs claim that SOMA singles out one class of citizens, in this case sex offenders, and subjects them to continuing stigmatization and discrimination in violation of their rights to equal protection. Id. ¶ 61. Plaintiffs also claim that civil confinement, after they have served their maximum term of incarceration, violates double jeopardy and

the ex post facto clause.[4] Id. ¶¶ 114, 128-29.

Plaintiffs allege that Defendants required the SOCTP participants to recite the "Serenity" prayer after every community meeting. Compl. at 3 and ¶ 106. Defendants also coerced Plaintiffs into participating in Alcoholics Anonymous ("AA") and Narcotics Anonymous ("NA"), which are both faith based, by threatening Plaintiffs with a loss of good time credits or barring their participation in the Family Reunion Program if they failed to participate in AA or NA. Compl. ¶¶ 106, 110-11.

Construing Plaintiffs' Complaint liberally, see Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996); Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006), Plaintiffs allege violations of (1) Due Process and Equal Protection under the Fourteenth Amendment; (2) the right against self-incrimination under the Fifth Amendment; (3) the Double Jeopardy Clause of the Fifth Amendment; (4) the Ex Post Facto Clause of Article I, § 10 of the United States Constitution; (5) the First Amendment's Establishment Clause; (6) the Eighth Amendments guarantee of the freedom from cruel and unusual punishment; and (6) violations of state laws and/or regulations. Liberally construed, Plaintiffs' Complaint also alleges that some of the Defendants conspired to violate Plaintiffs' constitutional rights and retaliated against Plaintiffs. Plaintiffs seek compensatory and punitive damages, including damages for mental and emotional injury, as well as injunctive and declaratory relief. Compl. at 47-53.

Defendants move to dismiss on the grounds that (1) Plaintiffs have not pleaded facts sufficient to state a plausible claim for relief; (2) the Court lacks jurisdiction to review Plaintiffs' challenge under SOMA; (3) Plaintiffs have not alleged a violation of their Fifth Amendment right against self-incrimination; (4) Plaintiffs have no liberty interest in good time credit not already awarded; (5)

---

[4]  Plaintiffs refer to the Ex Post Facto Clause of Article I, § 10 of the United States Constitution.

Plaintiffs' claims pertaining to the SOCTP are barred by res judicata, and (6) Plaintiffs' equal protection claims lack merit.  Dkt. No. 115-1.

## II.    STANDARD OF REVIEW

### A.    Rule 12(b)(1)

Rule 12(b)(1) permits a defendant to raise as a basis for dismissal a court's lack of subject matter jurisdiction.  FED. R. CIV. P. 12(b)(1); see Luckett v. Bure, 290 F.3d 493, 496 (2d Cir. 2002); Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  "In resolving the question of jurisdiction, the district court can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  Luckett, 290 F.3d at 496-97.

### B.    Rule 12(b)(6)

On a motion to dismiss under Rule 12(b)(6), the allegations of the complaint must be accepted as true.  See Cruz v. Beto, 405 U.S. 319, 322 (1972).  The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980).  "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice."  Spence v. Senkowski, No. 91-CV-955, 1997 WL 394667, at *2 (N.D.N.Y. Jul. 3, 1997) (citing Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991)).  Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral*

*to the complaint*' may be considered by the court in ruling on such a motion." Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991) (emphasis added).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n. 6 (1963); see also Arar v. Ashcroft, 532 F.3d 157, 168 (2d Cir. 2008). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Id. (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007); Ashcroft v. Iqbal, 129 S.Ct. at 1950 (citing Twombly). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. at 1949. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires

the reviewing court to draw on its judicial experience and common sense."  Ashcroft v. Iqbal, 129 S.Ct. at 1950-51.

### C.    *Sua Sponte* **Review of Claims By the Court**

While Defendants' Motion to dismiss does not address many of the claims asserted in the Complaint, the Court nonetheless finds that many of these additional claims may be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(2) and 1915A.  Section 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "(2) . . . the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).  Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A.

With these standards in mind, the Court will review Plaintiffs' Complaint.

## III.    DISCUSSION

### A.    **Sex Offender Management and Treatment Act**

Plaintiffs assert that Defendants Spitzer, O'Donnell, Alexander, Fischer, Hogan, Ritter, Bluth, and Melkonian have violated Plaintiffs' rights, either by enacting or enforcing SOMA.  Compl. ¶¶ 115-17, 128-29.  Plaintiffs also allege that Defendants Fischer, Elfeldt, Smith, Andrews, Rudder, Fitchett, McCullough, Chiapperino, Townley, and Bode violated their rights by conspiring to civilly confine

Plaintiffs under SOMA.  Compl. ¶ 114.  Defendants assert that Plaintiffs' claims which challenge

SOMA should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that subject

matter jurisdiction over these claims is precluded either because the claims are unripe or moot.

On March 14, 2007, Governor Spitzer signed SOMA into law; SOMA became part of Article 10

of the New York State Mental Hygiene Law ("MHL").[5]  Article 10 requires sex offenders nearing

release from prison to undergo review to determine whether they have a "mental abnormality" that

predisposes them to reoffend.  N.Y. MENTAL HYG. § 10.07.  If the sex offender is found to have a

mental abnormality, a court must then determine whether to require inpatient confinement and

treatment (civil confinement) or release subject to "strict and intensive supervision and treatment".

MENTAL HYG. §§ 10.07, 10.11.

Plaintiffs allege that SOMA violates their right to be free from double jeopardy because it

subjects them to further punishment, in the form of civil confinement, "after their release or their legally

imposed sentences have expired" which results in their "paying for the same crime over again."  Compl.

¶¶ 71-75.  Plaintiffs also assert that SOMA is an ex post facto law.  Id. ¶¶ 72-80.  Defendants assert that

Plaintiffs' challenge to SOMA is either (1) unripe as to any Plaintiff still incarcerated and not yet

subject to civil confinement under SOMA, or (2) moot in the case of any Plaintiff who has been

released from incarceration and not subjected to civil confinement under SOMA.  Dkt. No. 115-1 at 9-

14.

Although Plaintiffs seem to consider it a forgone conclusion that they will be subject to civil

confinement and mental health treatment upon the expiration of their maximum terms of incarceration

_____

[5]  For a more complete description of the contours of N.Y. MENTAL HYG. Art. 10, see generally Mental Hygiene Legal Serv. v. Spitzer, No. 07 Civ. 2935, 2007 WL 4115936 (S.D.N.Y. Nov. 16, 2007).

and release from DOCS custody, the MHL makes clear that an inmate **may** be considered for continued civil confinement, but civil confinement is not automatic.  As noted above, a sex offender due to be released is only civilly confined under the following set of circumstances: (1) the inmate must be found to suffer from a "mental abnormality" that predisposes the inmate to reoffend; and (2) once a mental abnormality is identified, a court must then determine whether to require inpatient confinement and treatment is necessary.  N.Y. MENTAL HYG. § 10.07.

      **1.**      **Plaintiffs Who Are Still in DOCS' Custody**

To have standing, a plaintiff must allege injury that is "concrete and particularized," and "actual or imminent, not conjectural or hypothetical."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (quotations omitted).  Further, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  Texas v. United States, 523 U.S. 296, 300 (1998) (quotations omitted).

As to the Plaintiffs who are still in DOCS custody, they do not and cannot know when, if ever, they will be civilly confined.  Moreover, in the event that any one of them is recommended for civil confinement because he is found to suffer from a mental abnormality, SOMA has in place a procedure for the inmate to challenge the recommended civil confinement.  N.Y. MENTAL HYG. §§ 10.06, 10.07. Plaintiffs' speculative claims do not present a justiciable Article III case or controversy.  Plaintiffs Ashford, Park, George, and Swift are still in DOCS' custody and no determination has been made as to whether they shall be civilly confined.[6]  Therefore their claims under SOMA are not ripe, and are

---

     [6]  According to the addresses of record, Plaintiffs Ashford, Park, and George are still in DOCS custody and Plaintiffs McDonald and Swift have been released.  See generally Docket Report. However, a review of the DOCS' website indicates that Plaintiff Swift was returned to DOCS' custody on June 10, 2010.  See N.Y. DOCS Inmate Locator Website, *available at* http://nysdocslookup.docs.state.ny.us (information for inmate Swift, DIN # 05B3040) (last visited Dec.

dismissed without prejudice.

### 2.    Plaintiffs Who Have Been Released From DOCS' Custody

The mootness doctrine is jurisdictional.  Cobos v. Unger, 534 F. Supp. 2d 400, 403 (W.D.N.Y.

2008).  This doctrine is based on the constitutional requirement that a "case or controversy" must be

present at all times during a litigation.  Id. (citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.

(TOC), Inc., 528 U.S. 167, 180 (2000)); see also U.S. Const. art. III, § 2 cl.1.  Where the issues in a case

are no longer "live," or the party lacks a legally cognizable interest in the outcome, the action may be

dismissed as moot.  Id.  Because mootness is jurisdictional, the court may consider it *sua sponte*.  Id.

(citing McGinty v. New York, 251 F.3d 84, 90 (2d Cir. 2001)).

The DOCS website indicates that Plaintiff McDonald was discharged from DOCS custody on

February 11, 2009 when his maximum term of incarceration expired; he was not placed in civil

confinement.[7]  Accordingly, Plaintiff McDonald's claims under SOMA are dismissed as moot.

### 3.    Conclusion

Because Plaintiffs' challenge to SOMA does not present a justiciable case or controversy, it

must be dismissed under Rule 12(b)(1).  See Alliance for Environmental Renewal, Inc. v. Pyramid

Crossgates Co., 436 F.3d 82, 88 n.6 (2d Cir. 2006) (noting that Rule 12(b)(1) is the "proper procedural

route" for a challenge to justiciability).  For the foregoing reasons, that part of Defendants' Motion

which seeks to dismiss Plaintiffs' claims challenging SOMA (see causes of action set forth at Compl.

¶¶ 114, 115, 116, 117, 128, and 129) is granted, and Plaintiffs' SOMA claims, including those alleging

---

8, 2010).  Swift has not notified the Court of this change of address.

[7] See N.Y. DOCS Inmate Locator Website, available at http://nysdocslookup.docs.state.ny.us
(information for inmate McDonald, DIN # 03B2885) (last visited Dec. 8, 2010).

violations of double jeopardy and the ex post facto clause as a result of SOMA, are dismissed for lack of jurisdiction.  Because the only allegations against Defendants Spitzer, O'Donnell, Alexander, Hogan, Ritter, Bluth, and Melkonian relate to SOMA, those Defendants are dismissed as well.

**B.    Challenges Arising from the SOCTP**

**1.    The <u>Donhauser</u> Settlement Agreement**

Defendants allege that Plaintiffs' claims arising from the SOCTP are barred under the principle of res judicata in light of the settlement in the <u>Donhauser v. Goord</u>, No. 9:01-CV-1535 (N.D.N.Y.) (Hurd, *J.*), a class action lawsuit.  By way of background, the lead plaintiff in <u>Donhauser</u> alleged that his Fifth Amendment right against self-incrimination was violated when DOCS officials threatened to deny him good-time credit based on his refusal to participate in DOCS' Sex Offender Counseling Program ("SOCP"), the program that pre-dated the SOCTP.[8]  Class certification was granted in that case on February 15, 2005.  The class was defined as all "current or former New York State prisoners who have lost or been denied good time credits or have been threatened with the loss or denial of good time credits because of a refusal to admit guilt to criminal sexual conduct as part of the Sexual Offender Counseling Program."  Dkt. No. 115-3 at 1.

After months of settlement negotiations in the <u>Donhauser</u> case, the parties drafted a proposed Settlement Agreement, which was approved by Judge Hurd.  <u>Donhauser</u>, Dkt. No. 194, Order, dated

---

[8]  The Court takes judicial notice of the Settlement Agreement as it is a public document not subject to "reasonable dispute" in that such information is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  FED. R. EVID. 201(b); <u>Reed v. Alexander</u>, 9:05-cv-0236, 2008 WL 3155310, at *1 n.3 (N.D.N.Y. Aug. 4, 2008) (taking judicial notice of an opinion docketed in a Western District of New York case to ascertain facts underlying the habeas petitioner's conviction); <u>see also</u> <u>Marcus</u>, 938 F. Supp. at 1164-65 (court may take judicial notice of public documents even if not included in or attached to complaint).

May 13, 2008. Judge Hurd directed that DOCS post the Notice of the proposed Settlement Agreement "in all facility law libraries, general libraries, inmate housing areas, and all Sex Offender Counseling and Treatment Program areas" and that "each facility Inmate Liaison Committee and Inmate Grievance Resolution Committee [] be provided with a copy of the Notice." Id. According to the Settlement Agreement, the Notice was at some point thereafter supplemented by adding the proposed Settlement Agreement, which remained posted until at least August 29, 2008. Settlement Agreement at Part I.K (Dkt. No. 115-3).

The Notice identified the nature of the lawsuit, the definition of the certified class, a summary of the proposed Settlement Agreement, and advised that "[t]he settlement of this lawsuit will not become final until the members of the plaintiff class have had an opportunity to object to the Settlement Agreement if they choose to do so." Donhauser, Dkt. No. 194, Notice at p. 3. Inmates were directed to make any objections to the proposed Settlement Agreement by writing a letter to the Clerk of the Court for the Northern District of New York to be received no later than July 15, 2008. Id. at 4. The parties in Donhauser entered into a Settlement Agreement on October 3, 2008. Donhauser, Dkt. No. 235. The Settlement Agreement, in sum and substance, provided that upon admission to any DOCS' SOCTP program, each inmate would be given a "Limits of Confidentiality, Partial Waiver of Confidentiality and Acknowledgment" form, which would include the following language:

> I [] understand that I am not required to admit the commission of a particular crime, whether it resulted in the present commitment or not.
>
> Rather, for successful program participation, I may discuss my behavior in general terms without providing the full names of victims, without disclosing the exact dates, times, and places of various sexual offending behavior, and without admitting to any specific crime or the violation of any specific section of the Penal Law. Nonetheless, I must openly and honestly discuss the behavior that resulted in my incarceration and referral to the program, demonstrate acceptance of the responsibility for the conduct that resulted in my criminal

conviction and demonstrate an understanding of my sexual offending behavior and cycle of abuse.

I have been advised that no written or oral statement made by me in conjunction with treatment services rendered in connection with the Sex Offender Counseling and Treatment Program may be used against me in a subsequent criminal proceeding.

Settlement Agreement at Part II.1.A (Dkt. No. 115-3).

The Settlement Agreement also stipulated that in the event the plaintiffs' counsel finds that DOCS is not in "substantial compliance" with its terms, he shall bring such findings to the attention of defendants' counsel in order to give DOCS an opportunity to investigate the allegations prior to seeking court intervention. Id. at Part II.2.A. By its terms, the Settlement Agreement is to remain in effect for two (2) years from the date of its approval. Id. at Part I.M. After receiving objections,[9] Judge Hurd approved the Settlement Agreement on October 17, 2008. Donhauser, Dkt. Nos. 238-39. Once the Settlement Agreement was approved, Judge Hurd dismissed the action, while retaining jurisdiction over the matter in order to assure compliance with the Settlement Agreement. Id., Dkt. No. 237.

### 2.    Class Actions

Class actions are based "on the notion that the interests of all class members are fully represented through the class representatives and through class counsel." Muhammad v. Warithu-Deen Umar, 98 F. Supp. 2d 337, 340-41 (W.D.N.Y. 2000). All members of the class, including absent and future members are equally bound by a class action judgment. Id. (citing inter alia Cnty. of Suffolk v. Long Island Lighting Co., 14 F. Supp. 2d 260, 266 (E.D.N.Y. 1998)). A judgment in favor of the plaintiff class extinguishes the claim, and basic principles of res judicata (claim preclusion) and collateral estoppel (issue preclusion) apply. Cooper v. Fed. Reserve Bank, 467 U.S. 867, 874 (1984)

---

[9]  Plaintiffs do not allege that any one of them filed an objection to the approval of the Settlement Agreement. See generally Donhauser Docket Report.

(citations omitted).

### 3.    Res Judicata and Collateral Estoppel

The doctrine of res judicata provides that a "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Caruso v. Candie's, Inc., 201 F.R.D. 306, 311 (S.D.N.Y. 2001) (quoting Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981)) (internal quotation marks omitted). The court must determine whether the prior action was (1) a final decision on the merits, (2) the litigants were the same parties or their privies, (3) the prior court was of competent jurisdiction, and (4) the causes of action were "integrally related" to the claims determined in the prior action.  Muhammad, 98 F. Supp. 2d at 341 (citations omitted); Gonzalez v. City of New York, 396 F. Supp. 2d 411, 415 (S.D.N.Y. 2005) (citing Corbett v. McDonald Moving Servs., Inc., 124 F.3d 82, 87-88 (2d Cir. 1997)).

Even if a plaintiff's entire claim is not precluded, the doctrine of collateral estoppel bars the relitigation of issues that were actually litigated and decided in a prior proceeding, as long as that determination was essential to that judgment.  Muhammad, 98 F. Supp. 2d at 342 (citing *inter alia* Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa, S.A., 56 F.3d 359, 368 (2d Cir. 1995)). Four elements must be met in order to apply collateral estoppel: (1) the issue in both cases must be identical, (2) the relevant issue must have been actually litigated and decided in the prior proceeding, (3) plaintiff must have had a full and fair opportunity to litigate in the prior proceeding, and (4) the issue in question must have necessary to the prior judgment.  Id.

### 4.    Effect of Request for Monetary Damages in This Action

The Court must first consider whether the Donhauser Settlement Agreement has any effect on Plaintiffs' requests for monetary damages in this action.  See Compl. at 47-53 (seeking declaratory and

16

injunctive relief, as well as monetary damages).  In <u>Donhauser</u>, plaintiffs initially sought monetary

damages, as well as declaratory and injunctive relief.  <u>Donhauser</u>, Dkt. No. 13.  By Memorandum-

Decision and Order filed on April 15, 2004, Judge Hurd dismissed the plaintiffs' claims for monetary

damages in <u>Donhauser</u> based upon qualified immunity, finding that the proper legal standard for

analyzing Donhauser's Fifth Amendment compulsion claim is in need of determination.  <u>Donhauser v.</u>

<u>Goord</u>, 314 F. Supp. 2d 119, 138 (N.D.N.Y. 2004).

> [A] number of circuit courts, including our own Second Circuit, have specifically held that
> prison inmates are not precluded from pursuing claims for damages resulting from allegedly
> unconstitutional prison conditions by an earlier judgment in a class action in which only
> declaratory or injunctive relief was pursued. <u>Wright</u> [<u>v. Collins</u>], 766 F.2d [841] at 847-49
> [4th Cir. 1985]; <u>Crowder</u> [<u>v. Lash</u>], 687 F.2d [996] at 1007-09 [7th Cir. 1982]; <u>Bogard v.</u>
> <u>Cook</u>, 586 F.2d 399, 408-09 (5th Cir. 1978), cert. denied, 444 U.S. 883, 100 S.Ct. 173, 62
> L.Ed.2d 113 (1979); <u>Cotton v. Hutto</u>, 577 F.2d 453, 454 (8th Cir.1978); <u>Jones-Bey v. Caso</u>,
> 535 F.2d 1360, 1361-62 (2d Cir. 1976).

<u>Morgan v. Ward,</u>  699 F. Supp. 1025, 1035 (N.D.N.Y. 1988).

In the present case, however, the Court need not determine whether the <u>Donhauser</u> Settlement

Agreement bars Plaintiffs' claims for monetary relief.  This is because Plaintiffs seek monetary relief

only on claims unrelated to the issues raised in <u>Donhauser</u>.[10]  <u>See</u> Compl. ¶¶ 51-53.  Moreover, even if

Plaintiffs' Complaint could be construed as requesting monetary damages with respect to their Fifth

Amendment compulsion claim, Defendants would be entitled to qualified immunity in this regard.  The

question presented is whether a denial of good time credits, parole, or programming based upon an

inmate's refusal to disclose criminal conduct amounts to a constitutional violation.  As Judge Hurd

noted in <u>Donhauser</u>, "[e]ven though a prisoner's right to be free from compelled self-incrimination has

been long established . . . the standard defining that right . . . has not and is not . . . Courts have not

---

[10]  Plaintiffs seek monetary damages only with respect to their SOMA claims, and for violation
of their rights under the First Amendment, the Eighth Amendment, and state law.  Compl. at 51-53.

reached a consensus on the proper legal parameters of such right; [government officials] should not [be] expected to solve the riddle either." Donhauser, 314 F. Supp. 2d at 139. This Court has reviewed the state of the law to date, and concurs with Judge Hurd's finding that the law remains unsettled. See Fifield v. Eaton, 669 F. Supp. 2d 294, 299 (W.D.N.Y. 2009) (finding that the Second Circuit has yet to address the issue, and there is no clear consensus among other federal courts on the issue).[11] Thus, an inmate's right to participate in the SOCTP without being compelled to make potentially incriminating statements about the conduct for which he was convicted, or about uncharged conduct, is by no means well-settled, and not a right with which Defendants should have been expected to be familiar. Thus Defendants would be entitled to qualified immunity with respect to monetary damages. The Court will now proceed to analyze what effect, if any, the Donhauser Settlement Agreement has on Plaintiffs' claims in this action to the extent that Plaintiffs seek injunctive or declaratory relief.

**5.    Application of Donhauser to Plaintiffs' Requests for Injunctive and Declaratory Relief**

A class action settlement, including a dismissal with prejudice is a final decision on the merits. Muhammad, 98 F. Supp. 2d at 342 (citing Cahill v. Arthur Andersen Co., 659 F. Supp. 1115, 1120 (S.D.N.Y. 1986), aff'd, 822 F.2d 14 (2d Cir. 1987)); see also Devlin v. Scardelletti, 536 U.S. 1, 9

---

[11]    In Fifield, the Western District found that, "even assuming that the opportunity to participate in the [Sex Offender Treatment] Program and to earn parole and/or good time credits are constitutionally protected liberty interests . . . an inmate's right to do so without being compelled to make potentially incriminating statements about the conduct for which he was convicted is by no means well-settled, and not a right with which the defendant should have been expected to be familiar." Id. at 300. See also Edwards v. Goord, 362 F.App'x 195, 198 (2d Cir. 2010), petitioner sought habeas corpus relief claiming that his Fifth Amendment privilege against compelled self-incrimination was violated when DOCS conditioned the award of good time credits on participation in a sex offender counseling program which required participants to admit to uncharged sex offenses without an offer of immunity. The District Court denied habeas relief, and the Second Circuit Court of Appeals affirmed, finding that law surrounding the alleged compulsion was not clearly established. Id.

18

(2002) ("The District Court's approval of the settlement--which binds petitioner as a member of the class--amounted to a final decision of [petitioner's] right or claim sufficient to trigger his right to appeal") (alterations in original, internal quotation marks and citation omitted).  Therefore, the Settlement Agreement is binding on Plaintiffs to the extent their claims are the same as those disposed of in <u>Donhauser</u>.[12]  Thus, the first requirement for res judicata is met.  As to the second element, there is no dispute that Judge Hurd's decision was from a court of "competent jurisdiction."  Since two of the four requirements are met, the questions for res judicata are whether Plaintiffs were class members, and whether the causes of action in <u>Donhauser</u> and in this case are "integrally related."

The class certified by Judge Hurd was defined as "[c]urrent or former New York State prisoners who have lost or been denied good time credits or have been threatened with the loss or denial of good time credits because of a refusal to admit guilt to criminal sexual conduct as part of the Sexual Offender Counseling Program."  <u>Donhauser</u>, Dkt. No. 127.  If Plaintiffs are class members, then they are parties albeit absent ones, to the prior litigation.  Even though Plaintiffs are raising different or additional claims, this alone would not take them out of membership in the class.  <u>See, e.g.</u>, <u>Taylor v. New York State Dep't of Correction</u>, No. 9:07-CV-1288, 2009 WL 3522466 (N.D.N.Y. Aug. 17, 2009) (Treece, M.J.), modified by 2009 WL 3522781 (N.D.N.Y. Oct. 29, 2009) (Mordue, C.J.) (denying dismissal only as to claims that were different from those in <u>Donhauser</u>).

In their Complaint, Plaintiffs allege, *inter alia*, that successful completion of the SOCTP depends upon an inmate's admission of crimes for which he has not been charged and/or found guilty, and that failure to make such admission will result in loss of good time credits.  Compl. ¶¶ 47, 48, 60.

---

[12]  With respect to those claims, Plaintiffs are free to contact the plaintiffs' counsel in the <u>Donhauser</u> case in order to advise him of any alleged non-compliance with the terms of the Settlement Agreement.  Settlement Agreement at Part.II(2)(A) (Dkt. No. 115-3).

Those allegations mirror the claims brought in Donhauser, and therefore Plaintiffs are members of the class in Donhauser. Also, to the extent that Plaintiffs allege that, if they refuse to admit guilt for uncharged sexual acts, they will be denied parole and participation in the Family Reunion Program, these claims are also barred by the Donhauser Settlement Agreement. See Van Gorder v. Lira, 9:08-CV-281, 2010 WL 1235328, at *6 (N.D.N.Y. Mar. 15, 2010) (Report-Recommendation) (Baxter, M.J.) (finding that plaintiff's claims that he was denied parole and participation in the Family Reunion Program because he refused to confess to uncharged acts were barred by the Donhauser Settlement Agreement), adopted by 2010 WL 1235283 (N.D.N.Y. Mar. 30, 2010) (Mordue, C.J.).

Since Plaintiffs raise some issues in this case that are different than those in Donhauser, and may not have been available in that action, the doctrine of res judicata does not apply to bar the entire action. However, collateral estoppel applies to bar the issues that were actually litigated and decided in Donhauser. In this action, Plaintiffs allege that their Fifth Amendment rights against self-incrimination were violated in light of the admissions required for participation in the SOCTP. A review of the four criteria for collateral estoppel shows that the Fifth Amendment issue is clearly identical to that actually litigated, and decided in Donhauser. The Fifth Amendment issue was also necessary to the final judgment in Donhauser. The Court must now determine whether Plaintiffs had a full and fair opportunity to litigate the issue.

A class action judgment is binding on all class members who did not opt out of the class. See Hansberry v. Lee, 311 U.S. 32, 40 (1940). An exception to this rule exists with respect to "absent" members of the class if they were not afforded due process. Id. This means that the "preclusive effect of the prior judgment will depend on whether members received adequate notice, an opportunity to appear and be heard, an opportunity to opt out of the class[,] and adequate representation." Id. (citing

Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 811-12 (1985)).  Plaintiffs in this case have not

challenged the adequacy of the representation in Donhauser; in fact they have not even responded in

opposition to Defendants' Motion to dismiss.  As outlined herein above, it is clear from the Donhauser

settlement that notice of the proposed settlement was issued by Judge Hurd on May 13, 2008 and posted

throughout DOCS in various parts of every facility.[13]  Dkt. No. 115-3, Settlement Agreement.  The

notice provided an opportunity for class members to object to the proposed settlement.  Id.  In light of

the foregoing, Plaintiffs were provided with a full and fair opportunity to litigate the issue.  Thus, this

Court finds that all of Plaintiffs' requests for injunctive and declaratory relief relating to their Fifth

Amendment rights against self incrimination in the course of the SOCTP should be dismissed as barred

by collateral estoppel.[14]

In light of the foregoing, the following claims are dismissed as barred by the Donhauser

Settlement Agreement: (1) Plaintiffs' claims that they have been, or will be, forced to admit to

uncharged acts under threat of losing good time credits, parole, or participation in the Family Reunion

Program and (2) Plaintiffs' Fifth Amendment claims.

---

[13]   The settlement agreement itself stated that the notice was "posted in all facility law libraries, general libraries, inmate housing areas, and all Sex Offender Counseling and Treatment Program housing and programming areas, and provided to the Inmate Liaison Committee and the Inmate Grievance Resolution Committee at each correctional facility beginning on or before May 30, 2008." Dkt. No. 115-3 at 3, ¶ K.  The agreement further states that the notice was supplemented by adding the proposed "Private Settlement Agreement" itself, and they remained posted until "at least August 29, 2008." Id.

[14]   To the extent that Plaintiffs attempt to frame their Fifth Amendment compulsion claim as an Eighth Amendment cruel and unusual claim (see Compl. ¶ 102), Plaintiffs fail to state an Eighth Amendment claim in that regard.  To the extent that Plaintiffs are attempting to make a double jeopardy claim that is separate from their Fifth Amendment argument, it is well-settled that sentencing administration statutes are not "criminal" for purposes of double jeopardy analysis.  See Sash v. Zenk, 439 F.3d 61, 63-64 (2d Cir. 2005).

However, Plaintiffs' claims in this action are not entirely identical to those brought in

Donhauser.  In addition to alleging that they were forced to admit to crimes for which they were not

charged and/or found guilty under threat of losing good time, parole, and programming, Plaintiffs also

make the following allegations that fall outside of the scope of the certified class in Donhauser:  (1)

SOMA violates double jeopardy and the ex post facto clause; (2) Plaintiffs were denied due process

under the Fourteenth Amendment when they were threatened with loss of parole, loss of good time

credits, and denied participation in the Family Reunion Program if they failed to complete the

SOCTP;[15] (3) Plaintiffs were denied due process when they were transferred to Shawangunk and placed

in the SOCTP without notice or opportunity to opt out; (4) Plaintiffs were denied due process when

they were classified as sex offenders; (5) Plaintiffs were subjected to cruel and unusual punishment at

Shawangunk in violation of their Eighth Amendment rights; (6) Plaintiffs were coerced into

participating in faith-based activities in violation of the First Amendment Establishment Clause; (7)

Plaintiffs were treated differently and discriminated against because they are designated sex offenders in

violation of Equal Protection; (8) only sex offenders are subject to civil confinement under SOMA in

violation of Equal Protection; (9) Defendants conspired to violate Plaintiffs' constitutional rights and

retaliated against Plaintiffs; and (10) Plaintiffs' rights were violated under state law and/or regulations.

See generally Compl.

These claims were not alleged in Donhauser nor disposed of through the Settlement Agreement.

Accordingly, Defendants' Motion arguing res judicata on the basis of Donhauser is granted only with

respect to Plaintiffs' claims that they were threatened with loss of good time credits, parole, and denied

---

[15]  The claims addressed in Donhauser were predominately addressed as violations of plaintiff's
Fifth Amendment right to be free from self-incrimination, therefore this Court will address Plaintiffs'
Fourteenth Amendment claims separately.

participation in the Family Reunion Program in violation of their Fifth Amendment rights if they failed to make confessions about crimes they committed or about uncharged crimes in order to participate in the SOCTP. The remaining claims are discussed separately below.

**C.    Due Process Claims**

Plaintiffs allege multiple violations of their right to due process under the Fourteenth Amendment. To state a claim under the due process clause, a plaintiff must first show the existence of a constitutionally protected right. Second, plaintiff must show the deprivation of that right without due process of law. See Valmonte v. Bane, 18 F.3d 992, 998 (2d Cir. 1994); see also Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989).

**1.    Parole**

Plaintiffs allege that they were threatened with the loss of parole if they did not complete the SOCTP. Compl. ¶¶ 47, 48. It is, however, well-settled that an inmate has no constitutionally protected liberty interest in parole or other conditional release from prison, prior to the expiration of a valid sentence. See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979); Barna v. Travis, 239 F.3d 169, 171 (2d Cir. 2001). Plaintiffs' due process claim with respect to parole fails as a matter of law, and is therefore dismissed with prejudice.

**2.    Good Time Credits**

The Second Circuit has also determined that an inmate has no constitutional right to discretionary good time release, or to participation in prison programs which might expedite release. See N.Y. CORRECT. LAW § 803 (outlining New York's discretionary good time credit program); Abed v. Armstrong, 209 F.3d 63, 67 (2d Cir. 2000) (where good time credit is a discretionary matter, inmate has no liberty interest in the opportunity to earn good time credit); see also Lighthall v. Vadlamudi, No.

9:04-CV-0721, 2006 WL 721568, at *14-15 (N.D.N.Y. Feb. 6, 2006) (Report-Recommendation) (inmates have no protected liberty interest in merit time, or programs awarding good time credit), adopted, 2006 WL 721568, at *1 (N.D.N.Y. Mar. 17, 2006). Accordingly, Plaintiffs' due process claim relating to lost opportunities to earn good time credits must be dismissed.

Additionally, to the extent that Plaintiffs are claiming that they were actually barred from any already-earned good time credit as a result of their refusal to participate fully in the SOCTP, "[Section] 1983 is not the proper vehicle . . . to seek redress for [an] alleged good-time credit deprivation [and] a writ of habeas corpus [i]s a prisoner's sole recourse in challenging the procedures used to deny him good-time credits." Ebron v. Lantz, No. 3:04CV1375, 2006 WL 18827 at *3 (D.Conn. Jan. 4, 2006) (citing Edwards v. Balisok, 520 U.S. 641 (1997)).

Plaintiffs' due process claims relating to good time credits are, therefore, dismissed.

### 3.    Participation in the Family Reunion Program

Plaintiffs had no liberty interest in participation in the Family Reunion Program. Leevon v. Goord, No. 99-CV-6208, 2003 WL 22384787, at *7 (W.D.N.Y. Sept. 4, 2003); Gatson v. Selsky, No. 94-CV-292, 1997 WL 159258, at *3 (N.D.N.Y. Apr. 4, 1997) (inmate's loss of Family Reunion Program visits does not give rise to liberty interest); Henry v. Coughlin, 940 F. Supp. 639, 643-44 (S.D.N.Y.1996) (finding no liberty interest where plaintiff's regular visitation rights were suspended on days when he had Family Reunion Program visits.). See also Thompson, 490 U.S. at 460 (rejecting the argument that inmates have a protected interest in unfettered visitation protected by the due process clause).

Plaintiffs' due process claims relating to the Family Reunion Program are dismissed with prejudice.

### 4.    Prison of Choice

Plaintiffs seem to complain that they were not given the choice as to whether or not they wished to be transferred to Shawangunk.  Compl. ¶ 31.  They also allege that they were treated poorly at Shawangunk by both inmates and staff.  Id. ¶¶ 34-39.  Inmates do not have a right to be placed in a particular facility or to be free from transfers between facilities.  See Meriwether v. Coughlin, 879 F.2d 1037, 1047 (2d Cir. 1989) ("It is well established that the transfer of a prisoner from one institution to another does not invoke the protection of the Due Process Clause.") (citation omitted); see also Tinsley v. Goord, No. 05 Civ. 3921,  2006 WL 2707324, at *5 (S.D.N.Y. Sep. 20, 2006) (generally, the Department of Correctional Services  has the authority and discretion to determine where inmates should be housed).  Moreover, the fact "[t]hat life in one prison is much more disagreeable than another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred" to a less desirable facility.  Meachum v. Fano, 427 U.S. 215, 225 (1976).   Plaintiffs do not have a constitutionally protected liberty interest in not being transferred to Shawangunk, and therefore they have failed to plead a due process violation in this regard.  This claim is dismissed with prejudice.

### 5.    Classification as a Sex Offender

Plaintiffs appear to take issue with their classification as sex offenders.  Plaintiffs claim that "Defendants are in the practice of 'misidentification of sex offenders' by labeling prisoners[ ] that have been convicted of non-sex offenses that were not sexually motivated or involved any behavior or misconduct of a sexual nature" and requiring those allegedly "misidentified" inmates to participate in the SOCTP.  Compl. ¶ 68.

In a recent case in this District, Magistrate Judge Homer was faced with the question of whether a liberty interest was created "where an individual, not convicted of an express sex offense, is then

25

required to participate in a [sex offender treatment program]." Blake v. Fischer, No. 9:09-CV-0266, 2010 WL 2522198, at *9 (N.D.N.Y. Mar. 5, 2010) (Report- Recommendation), (Homer, M.J.), adopted, 9:09-CV-0266, Decision and Order (N.D.N.Y. June 15, 2010) (Hurd, J.). Magistrate Judge Homer found that "circuits have split as to whether or not a liberty interest exists for the inmate to be free from the label of a sex offender, required to participate in treatment." Blake, 2010 WL 2522198, at *9. He concluded that, although there is a split of authority over this question,

> courts within the Second Circuit appear to be reaching a consensus that recommendations for sex offender classification and programming do not trigger due process rights. See Vega v. Lantz, No. 03-CV-2248, 2008 WL 3992651, at *15-17 (D. Conn. Aug. 25, 2008); Fifield v. Eaton, No. 07-CV-6521L, 2009 WL 3429791, at *2-3 (W.D.N.Y. Oct. 20, 2009) (granting motion to dismiss inmate's claim that he was denied parole opportunities due to his refusal to participate in SOP because inmate had no liberty interest in parole, conditional release, discretionary good time credits, or choosing his programming); Tinsley, 2006 WL 2707324, at *5 (finding no constitutionally protected right, either federally or state-created, which allows "prisoners [to] ... avoid classification as sex offenders or participat[e] in related treatment programs.").

Blake, 2010 WL 2522198, at *10. In this case, unlike in Blake, each of the remaining Plaintiffs is classified as a sex offender pursuant to the New York State Sex Offender Registration Act ("SORA"), New York State Correction Law § 168, et seq., and therefore each has been convicted of an express sex offense. See N.Y. CORRECT. LAW § 168-a (listing various offenses that fall within the category of "sex offense" or result in an individual being classified as a "sexually violent offender" for purposes of registration under SORA).[16] Given their conviction histories, see supra, Section I., none of the

---

[16] For example, Plaintiffs Ashford, Park, George, and Swift have each been convicted of either Rape in the First Degree or Attempted Rape in the First Degree (see supra, Section I), each which fall within the category of sexually violent offender. N.Y. CORRECT. LAW § 168-a (3) (a sexually violent offender includes anyone convicted of Rape in the First Degree under N.Y. PENAL LAW § 130.50, or for an attempt to commit Rape in the First Degree). Plaintiffs George and McDonald have both been convicted of Rape in the Second Degree under N.Y. PENAL LAW § 130.30 (see supra, Section I), a crime which is classified as a sex offense. N.Y. CORRECT. LAW § 168-a (2) (a sex offense includes a conviction of Rape in the Second Degree under N.Y. PENAL LAW § 130.30).

remaining Plaintiffs has been "misclassified" as a sex offender.  With this legal and factual background

in mind, the Court finds that Plaintiffs' claims that they were denied due process before being labeled

sex offenders, or before being placed in the SOCTP, should be dismissed with prejudice.

### D.    Eighth Amendment Claims

In order to state a claim under the Eighth Amendment, Plaintiffs must show: (1) that the

conditions of their confinement resulted in deprivation that was sufficiently serious; and (2) that the

defendants acted with deliberate indifference to their health or safety.  Farmer v. Brennan, 511 U.S.

825, 834 (1994); Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999).  Deliberate indifference exists if

an official "knows of and disregards an excessive risk to inmate health or safety; the official must both

be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,

and he must also draw the inference."  Farmer, 511 U.S. at 837.  In considering the types of conditions

that constitute a substantial risk of harm, court consider not only the seriousness of the potential harm

and the likelihood that the harm will actually occur, but also any indication that unwilling exposure to

that risk violates contemporary standards of decency, that is, a plaintiff "must show that the risk of

which he complains is not one that today's society chooses to tolerate."  Helling v. McKinney, 509 U.S.

25, 36 (1993).

Not every governmental action related to the interest and well-being of a prison inmate,

however, demands Eighth Amendment scrutiny.  Sanders v. Coughlin, No. 87 Civ. 4535, 1987 WL

26872, at *2 (S.D.N.Y. Nov 23, 1987) (citing, inter alia, Whitley, 475 U.S. at 319).  "After

incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual

punishment forbidden by the Eighth Amendment."  Id. (quoting, inter alia, Whitley; internal quotes

omitted).  Conduct not intended to be punishment must consist of "more than ordinary lack of due care

27

for the prisoner's interests or safety" to be considered cruel and unusual punishment.  Id.  Mere

negligence in the treatment of a prisoner, without more, is not actionable under the Eighth Amendment.

See Farmer, 511 U.S. at 837-38.

Plaintiffs claim that (1) the water available for drinking and bathing on the B-2 Housing Unit at

Shawangunk was contaminated; (2) inmates who were on kitchen staff tampered with their food

because of their sex offender designation; (3) being labeled as sex offenders and placed in the SOCTP

amounted to cruel and unusual punishment; and (4) staff failed to protect them from a known danger.

Plaintiffs also assert multiple miscellaneous claims.  Compl. ¶¶ 96-99.

### 1.    Contaminated Water

In claiming that their water for drinking and bathing was contaminated, Plaintiffs have presented

a facially valid Eighth Amendment claim.  See, e.g., Bellezza v. Fischer, No. 05 Civ. 98, 2006 WL

3019760, at *4 (S.D.N.Y. Oct. 24, 2006) ("Water that is suitable for drinking and bathing is undeniably

one of 'life's necessities,' and . . . the Eighth Amendment therefore requires that it be supplied to

inmates.").  Plaintiffs allege that Defendants Fischer, Elfeldt, Smith, Rudder, Fitchett, McCullough,

Chiapperino, Townley, and Bode "fail[ed] to address the issue of [the] contaminated water supply."

Compl. ¶ 112.

Reading Plaintiffs' Complaint liberally and accepting the factual allegations therein as true, the

Court finds that, at this juncture, Plaintiffs have sufficiently pleaded a claim under the Eighth

Amendment with respect to the allegedly contaminated water supply at Shawangunk against Defendants

Fischer, Elfeldt, Smith, Rudder, Fitchett, McCullough, Chipperino, Townley, and Bode.

### 2.    Food Tampering

Plaintiffs also allege that "information was exposed" that general population inmates who

worked in the kitchen at Shawangunk "were tampering with the food being served for the meals to the 'prisoner class' being housed in the B2-Housing Block" designated to be sex offenders. Compl. at 3. This does not state any sort of claim against any of the Defendants, as it only alleges wrongdoing by unnamed inmates. It is, therefore, dismissed without prejudice.

### 3.    Placement in the SOCTP/Unsafe Environment

Construing their Complaint liberally, Plaintiffs allege that their placement in the SOCTP subjected them to "psychological and emotional distress" and created an unsafe environment for them, which amounted to an infliction of cruel and unusual punishment.

> However, courts have consistently found requiring participation in such programs constitutional. A correctional institution's goal of rehabilitating inmates, and reducing rates of recidivism, by providing such treatment programs represent "important and laudable goals, and the institution of the program itself was well within the State's authority as part of its operation of correctional facilities . . . . [Moreover,] the State's pursuit of these goals or its administration of the SOTP [does not] . . . violate [ ] contemporary standards of decency." Neal v. Shimoda, 131 F.3d 818, 833 (9th Cir. 1997); see also Tinsley, 2006 WL 2707324, at *3-4 (holding that sex offender treatment status did not subject the inmate to sort of unnecessary or wanton infliction of pain).

Blake, 2010 WL 2522198, at *9. Thus, Plaintiffs' Eighth Amendment claim that being placed in the SOCTP amounts to cruel and unusual punishment fails as a matter of law, and is dismissed with prejudice.

Plaintiffs also allege that Defendants created a dangerous environment at Shawangunk, or failed to adequately protect Plaintiffs, by housing them in close proximity to the CSU where the most dangerous inmates were housed. Compl. at 3. Plaintiffs allege that although "staff/employees were notified and informed" that the CSU inmates "made threats to injure 'Sex Offenders' at any given chance or opportunity," the staff/employees "refused to act to correct the situation." Id. at 3-4. Plaintiffs allege that one of the Plaintiffs was knifed by a Close Supervision Inmate on account of that

29

Plaintiff's sex offender status. Id. ¶ 37. The injured Plaintiff was put into the Involuntary Protective Custody Unit for his own protection. Id. ¶ 38. Plaintiffs also allege that a non-party inmate was fatally stabbed while coming to the aid of one of the Plaintiffs who was being attacked by a CSU inmate.[17] Id. ¶ 39.

Under the Eighth Amendment, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Farmer, 511 U.S. at 833 (quoting Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir. 1988)). In Farmer, the Supreme Court set out the two-pronged test that determines when a failure to protect a prison inmate from assault by other inmates rises to the level of a constitutional violation. First, the prisoner must have been "incarcerated under conditions posing a substantial risk of serious harm." Id. at 834. Second, the prison official must have shown "deliberate indifference" to the prisoner's safety. Id. Deliberate indifference exists when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; Hines v. Lacy, 189 F.3d 460 (2d Cir. 1999). It is also well-settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). Plaintiff must allege a "tangible connection between the acts of a defendant and the injuries suffered." Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986).

Plaintiffs' failure to protect cause of action is set forth in wholly conclusory terms. Aside from

---

[17] Plaintiffs do not have standing to seek relief for the inmate who was fatally stabbed; that inmate is not, and has never been a party to this action. Plaintiffs do not state which Plaintiff was allegedly knifed; therefore, it is not clear whether the injured Plaintiff is still a party to this action. If that Plaintiff is no longer a party, the Court does not have jurisdiction over his claims.

30

their allegations that they received threats from CSU inmates and that "staff/employees" were notified of these threats and took no action, Plaintiffs have offered no specific information to establish that they were incarcerated under conditions posing a substantial risk of harm. While Plaintiffs' Complaint alleges an incident whereby one Plaintiff was assaulted by a CSU inmate, it is not clear that the injured Plaintiff is still a party to this action. Similarly, Plaintiffs' Complaint fails to identify which of the various Defendants are alleged to have had knowledge of the existence of conditions posing a substantial risk of serious harm, but were deliberately indifferent to that risk. Under these circumstances, Plaintiffs have failed to comply with the Second Circuit's directive that they allege objective facts demonstrating the existence of a plausible claim of unlawful failure to protect on the part of one or more of the Defendants, in violation of the Eighth Amendment. Accordingly, Plaintiffs' failure to protect claim is dismissed without prejudice. See, e.g., Dawes v. Walker, 239 F.3d 489, 494 (2d Cir. 2001) (affirming dismissal of failure to protect claim where plaintiff did not allege that he was assaulted or even threatened by other inmates); Bolton v. Goord, 992 F. Supp. 604, 627 (S.D.N.Y. 1998) ("Plaintiffs' testimony that they lived in fear of assault from their cellmates is not an objectively serious enough injury to support a claim for damages.").

Finally, Plaintiffs allege that they were threatened and harassed by staff and other inmates at Shawangunk on account of their sex offender status. A claim brought under § 1983 is "not designed to rectify harassment or verbal abuse." Gill v. Hoadley, 261 F. Supp. 2d 113, 129 (N.D.N.Y. 2003) (citing Alnutt v. Cleary, 913 F. Supp. 160, 165-66 (W.D.N.Y. 1996)); Aziz Zarif Shabazz v. Picco, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (noting that, ordinarily, a claim for verbal harassment is not actionable under § 1983). Moreover, "verbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the

violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." <u>Aziz Zarif Shabazz</u>, 994 F. Supp. at 474. Therefore, Plaintiffs have failed to state a claim for relief against the Defendants, as their purported threats or harassment do not rise to the level of a constitutional violation. These claims are also dismissed with prejudice.

### 4. Remaining Eighth Amendment Claims

Plaintiffs also allege a panoply of other claims under the Eighth Amendment including that Defendants were aware "that various corrections officers have made blatant death threats towards a number of inmate participants" in the SOCTP, Compl. ¶ 96; and that Defendants have not provided Plaintiffs with therapeutic materials – including paper, blackboards, therapeutic board games, acetate film for overhead projectors – or adequate cleaning supplies, <u>id.</u> ¶¶ 98-99. None of these allegations plausibly suggest that Defendants were personally involved in the violation of Plaintiffs' Eighth Amendment rights or even that such rights were violated. <u>See</u> <u>Barr v. Abrams</u>, 810 F.2d 358, 363 (2d Cir. 1987)(complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions). These remaining Eight Amendment claims are dismissed without prejudice.

### E. First Amendment Establishment Clause

The First Amendment, made applicable to states through the Fourteenth Amendment, provides in relevant part that "Congress shall make no law respecting an establishment of religion . . . ." U.S. Const. amend. I. The First Amendment's Establishment Clause prohibits government from officially preferring one religious denomination over another. Thus, "[t]he clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." <u>Larson v. Valente</u>, 456 U.S. 228, 244 (1982); <u>Skoros v. City of New York</u>, 437 F.3d 1, 16 (2d Cir.

2006).

Plaintiffs allege that staff at Shawangunk implemented an "unwritten procedure" of requiring the SOCTP inmates to recite "a religious protocol from the Alcoholics Anonymous Organization named 'Serenity Prayer' at the conclusion of all Community Meetings five days a week promoting a religious doctrine from the philosophy of A.A. (Alcoholics Anonymous) in violation of the First Amendment to the United States Constitution." Compl. at 3. Plaintiffs also allege that, through actions taken by Defendants Fischer, Elfeldt, Smith, Andrews, Rudder, Fitchett, McCullough, Chipperino, Townley, and Bode, Plaintiffs were coerced into participating in AA and Narcotics Anonymous ("NA") programs

> or risk lost of good time credits when these programs both contained religious activities, also plaintiffs would not be allowed to be approved to participate in the Family Reunion Program if they did not take these programs, when it is a tenet of the First Amendment that the State cannot require one of its citizens to forfeit his or her rights and benefits as the price of resisting conformance to state-sponsored religious practice.

Compl. ¶ 111. Construed liberally, Plaintiffs allege that Defendants have required them to participate in faith-based programs in violation of the First Amendment Establishment Clause. Defendants have not addressed this claim in their Motion.

The question presented at this stage of the proceeding is not whether Plaintiffs have or can adduce facts sufficient to prove their First Amendment Establishment Clause claim. At this early stage of the litigation, the Court must accept Plaintiffs' allegations as true and may not dismiss the case unless it is clear that it would be impossible for Plaintiffs to make out a legally cognizable claim. Applying this standard, the Court finds that Plaintiffs have sufficiently pleaded a claim under the First Amendment Establishment Clause. Plaintiffs allege that they have been subjected to religious practices against their will, or under threat of losing privileges. Plaintiffs allege that they are compelled to participate in these faith-based programs in order to avoid lengthier incarceration or loss of privileges,

and that this compelled participation violates the First Amendment Establishment Clause.  See, e.g.,

Warner v. Orange County Dept. of Probation, 115 F.3d 1068, 1075 (2d Cir. 1997) (holding that because

the plaintiff was sent to Alcoholics Anonymous as a condition of his probation, without offering a

choice of other providers, he was "plainly" coerced in violation of the Establishment Clause);

Alexander v. Schenck, 118 F. Supp. 2d 298, 301 (N.D.N.Y. 2000) (prisoner ordered to attend Alcohol

and Substance Abuse Treatment Program was "coerced" for purposes of First Amendment).

Plaintiffs have adequately pleaded a First Amendment Establishment Clause claim against

Defendants Fischer, Elfeldt, Smith, Andrews, Rudder, Fitchett, McCullough, Chipperino, Townley, and

Bode.

## F.    Equal Protection

The equal protection clause requires the government to treat all similarly situated people alike.

City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1989).  To state a claim for a violation of

the equal protection clause, Plaintiffs must allege facts plausibly suggesting that they were intentionally

treated differently from others similarly situated as a result of intentional or purposeful discrimination

directed at an identifiable or suspect class.  See Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995).

If Plaintiffs are unable to identify as a suspect or quasi-suspect class, they must show any complained of

differential treatment "distinguishing characteristics relevant to interests the state has the authority to

implement" was not rationally related to a legitimate governmental purpose.  City of Cleburne v.

Cleburne Living Ctr., 473 U.S. 432, 441-42 (1985)); Buthy v. Cmm'r of Office of Mental Health of

NYS, 818 F.2d 1046, 1049 (2d Cir. 1987); Ruggia v. Kozak, No. 9:05-CV-0217, 2008 WL 541290, at

*18 (N.D.N.Y. Feb. 25, 2008).

In this case, Plaintiffs do not include the nature of this alleged discrimination, nor any specific

34

discriminatory acts apart from claiming that, because they were sex offenders, they "were subjected to discrimination, biasness, and partiality through behaviors and actions of staff/employees" at Shawangunk.  Compl. at 2.   In the first instance, the Court notes that this part of Plaintiffs' equal protection claim rests only on their conclusory allegation that they suffered discrimination by Defendants, without any further facts in support.  However, "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning."  Hunt v. Budd, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing Barr, 810 F.2d at 363) (other citations omitted)); Pourzandvakil v. Humphry, 94-CV-1594, 1995 WL 316935, *7 (N.D.N.Y. May 22, 1995) (Pooler, J.) (citation omitted).

Moreover, insofar as they claim that they were discriminated against because they are classified as sex offenders, sex offenders do not comprise a suspect class for equal protection purposes.  See Giano, 54 F.3d at 1057; see also Artway v. Atty. Gen., 81 F.3d 1235, 1267 (3d Cir. 1996) (finding that sex offenders are not a suspect class warranting heightened equal protection scrutiny); Travis v. N.Y. State Div. of Parole, 96-CV-0759, 1998 WL 34002605 (N.D.N.Y. Aug. 26, 1998) (Report-Recommendation) (Sharpe, M.J.) ("Sex offenders do not comprise a suspect or quasi-suspect class for Equal Protection purposes.") (citations omitted), adopted, 96-CV-0759, Decision and Order (N.D.N.Y. filed Nov. 2, 1998) (McAvoy, C.J.); Selah v. Goord, 04-CV-3273, 2006 WL 2051402, at *6 (S.D.N.Y. July 25, 2006) ("Neither sex offenders nor the mentally ill are a suspect class warranting heightened [or strict] equal protection scrutiny.") (citations omitted).

Since sex offenders do not comprise a suspect class for equal protection purposes, the allegedly different treatment is subject to rational basis scrutiny, that is, it must be rationally related to a

legitimate state interest.  See Ruggia, 2008 WL 541290, at *18.  Conclusory allegations of disparate treatment or a plaintiff's personal belief of discriminatory intent are insufficient to plead a valid equal protection claim.  Nash v. McGinnis, 585 F. Supp. 2d 455, 462 (W.D.N.Y. 2008).

Here, Plaintiffs' Complaint does not include any facts plausibly suggesting that similarly situated prisoners were treated differently than they were.  Rather, Plaintiffs merely allege in conclusory fashion that "they were subjected to discrimination, biasness, and partiality through behaviors and actions of staff/employees" at Shawangunk.[18]  Compl. at 2.  Plaintiffs fail to identify any other individuals who were treated differently from them and how.  Plaintiffs' allegations, thus, do not raise a plausible claim that Plaintiffs were selectively treated in comparison to other similarly situated inmates.

Plaintiffs also allege that, under the civil confinement provisions of SOMA, sex offenders are treated differently than other prisoners -- such as those convicted of murder, assault, burglary, etc. However, the Court has already concluded that Plaintiffs have no standing to challenge SOMA at this juncture.

Finally, Plaintiffs allege that Defendants Fischer, Elfeldt, Smith, Andrews, Rudder, Fitchett, McCullough, Chiapperino, Townley, and Bode discriminated against Plaintiffs on the basis of their "sexual orientation" by encouraging and allowing other inmates in the SOCTP to degrade and disparage them on account of their sexual orientation.  Compl. ¶ 127.  "Sexual orientation has been held to be a basis for an equal protection claim under Section 1983."  Emblen v. Port Authority of New York/New Jersey, No. 00 Civ. 8877, 2002 WL 498634, at *7 (S.D.N.Y. Mar. 29, 2002) (citing Quinn v. Nassau

---

[18]  Plaintiffs also claim that Defendants Rudder, Fitchett, McCullough, Chiapperino, Townley, and Bode were biased towards and favored certain inmates in the SOCTP over others.  Compl. ¶ 124. This presents no basis for an Equal Protection claim as Plaintiffs only allege that some sex offenders were treated differently than other sex offenders.

County Police Dep't, 53 F. Supp. 2d 347, 356-57 (E.D.N.Y. 1999) (holding that the Supreme Court in

Romer v. Evans, 517 U.S. 620 (1996) "established that government discrimination against

homosexuals, in and of itself, violates the Equal Protection Clause") (citation omitted)).  However,

Plaintiffs have not alleged that they have been personally subject to any disparaging remarks.

Moreover, to the extent that any Plaintiff was the subject of harassing comments against him because of

his perceived sexual orientation, Plaintiffs' allegations do not plausibly suggest a violation of equal

protection.  At best, Plaintiffs allege that some or all of them were verbally harassed.  However,

allegations of verbal harassment are insufficient to support a § 1983 claim.  See Purcell v. Coughlin, 790

F.2d 263, 265 (2d Cir. 1986) ("Purcell's claims that prison guards called him names . . . did not allege a

constitutional violation . . . ."); Webster v. Fischer, 694 F. Supp. 2d 163, 187 (N.D.N.Y. 2010) (Kahn,

J., adopting Report-Recommendation of Peebles, M.J.).

Plaintiffs have not stated a plausible claim for violation of their rights under the equal protection

clause.  Plaintiffs' equal protection claims are dismissed without prejudice.

## G.    Conspiracy

Plaintiffs claim that Defendants Fischer, Elfeldt, Smith, Andrews, Rudder, Fitchett,

Chiapperino, Townley, and Bode conspired to (1) deprived Plaintiffs of equal protection on account of

their sex offender status by threatening them with civil confinement if they did not sign the consent

waivers for the SOCTP and (2) withhold Plaintiffs' good time credits unless they participated in the

SOCTP.  Compl. ¶¶ 107, 108.  To survive a motion to dismiss (or in this case, review under 28 U.S.C.

§§ 1915(e) and 1915A), a conspiracy claim under § 42 U.S.C. 1983 must allege that:  (1) an agreement

existed between two or more state actors to act in concert to inflict an unconstitutional injury on

plaintiff and (2) an overt act was committed in furtherance of that goal.  Ciambriello v. Cnty. of Nassau,

292 F.3d 307, 324-25 (2d Cir. 2002).  Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed.  Ciambriello, 292 F.3d at 325; see also Sommer v. Dixon, 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."). Moreover, a § 1983 conspiracy claim must not only allege a conspiracy, but also the "actual deprivation of constitutional rights."  Romer v. Morgenthau, 119 F. Supp. 2d 346, 363-64 (S.D.N.Y. 2000) (citing Malsh v. Austin, 901 F. Supp. 757, 765 (S.D.N.Y. 1995)).  "Thus, if a plaintiff cannot sufficiently allege a violation of his rights, it follows that he cannot sustain a claim of conspiracy to violate those rights."  See Id.

Because Plaintiffs have asserted their conspiracy claims in only vague and conclusory terms, conspicuously lacking in any detail regarding the participants in the conspiracy, the meeting of the minds, and any overt act committed in furtherance of the goal of the conspiracy, Plaintiffs' conspiracy claims (Compl. ¶¶ 107, 108) are dismissed without prejudice.  See Polur v. Raffe, 912 F.2d 52, 56 (2d Cir. 1990); Barr, 810 F.2d at 363.

**H.    Retaliation**

Courts must approach claims of retaliation "'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act.'"  Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003) (quoting Dawes, 239 F.3d at 491, overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).  In order to survive a motion to dismiss a complaint, a plaintiff asserting a First Amendment retaliation claim must advance "non-conclusory" allegations establishing:

(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action.

Davis, 320 F.3d at 352 (quoting Dawes, 239 F.3d at 492). "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983).

In this action, Plaintiffs allege only that Defendants Smith, Andrews, Rudder, Fitchett, McCollough, Chiapperino, Townley, Bode, Kober, Cutler, Stefanik, Haine, Kane, Gay, Hoetger, and Gardner "are liable for retaliatory behavior and actions taken against plaintiff(s) through the Retention Hearing, 'Disciplinary Program'[,] 'Inmate Grievance Program' and 'Program Committee' by arbitrary discriminatory and supervisor liability." Compl. at 49. These allegations are set forth only in Plaintiffs' requests for relief and are not supported by any facts whatsoever. Plaintiffs' retaliation claims are wholly conclusory and do not allege any of the elements necessary to state a plausible retaliation claim. Plaintiffs' retaliation claims are dismissed without prejudice. Since the only allegations against Defendants Kober, Cutler,[19] Stefanik, Haine, Kane, Gay, Hoetger, and Gardner are that they retaliated against the Plaintiffs, these Defendants are also dismissed without prejudice.

## I.    State Law Claims

Plaintiffs allege that Defendants violated state laws and regulations because (1) counselors for the SOCTP were not "statutorily qualified under Civil Service Law of New York State" and (2) the program did not have a policy and procedure manual or any guidelines in place. Compl. at 2. Plaintiffs also allege, in conclusory fashion, violations of multiple state laws and regulations which they claim

---

[19]    Plaintiffs also allege that Defendant Cutler has been reviewing inmate guidance files. Compl. at 33. This allegation fails to state any sort of claim under Section 1983.

amount to "State tort claims."  Id. at 4.   A violation of a state law or regulation, in and of itself, does

not give rise to liability under 42 U.S.C. § 1983.  Doe v. Conn. Dep't of Child and Youth Servs., 911

F.2d 868, 869 (2d Cir. 1990); Farid v. Demars, No. 9:06-CV-1545, 2009 WL 455450, at *6 n.6

(N.D.N.Y. Feb. 23, 2009).  Because Plaintiffs seek to hold Defendants liable for the alleged state law

violations pursuant to § 1983, those claims are dismissed.

**J.    Emotional Distress**

An inmate's right to recover damages in an action alleging a violation of constitutional rights

was significantly limited by the enactment of 42 U.S.C. § 1997e as part of the PLRA.  Section 1997e(e)

provides as follows:

> No Federal civil action may be brought by a prisoner confined in a jail, prison or other
> correctional facility, for mental or emotional injury suffered while in custody without a
> prior showing of physical injury.

42 U.S.C. §1997e(e).

In the present case, Plaintiffs do not allege that they suffered any physical injury as a result of

the Defendants' alleged misconduct toward them.  Therefore, to the extent that Plaintiffs seek to

recover damages for the psychological and emotional trauma which they have allegedly suffered, such

relief is barred by § 1997e(e).

**K.    Defendant Moss**

Plaintiffs list Sergeant Moss of Shawangunk Correctional Facility as a Defendant, see Compl. at

12, but the Complaint includes no allegations of wrongdoing by Defendant Moss.  "Dismissal is

appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate

what the defendant did to the plaintiff."  Cipriani v. Buffardi, No. 9:06-CV-889, 2007 WL 607341, at

*1 (N.D.N.Y. Feb. 20, 2007) (citing Gonzalez v. City of New York, No. 97 CIV. 2246, 1998 WL

40

382055, at *2 (S.D.N.Y. Jul. 9, 1998); <u>Crown v. Wagenstein</u>, No. 96 CIV. 3895, 1998 WL 118169, at *1 (S.D.N.Y. Mar.16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement); <u>Taylor v. City of New York</u>, 953 F. Supp. 95, 99 (S.D.N.Y. 1997) (same)). Because Plaintiffs have failed to allege any personal involvement on the part of Defendant Moss, he is hereby dismissed without prejudice as a Defendant in this action.

**L.     Dismissal With or Without Prejudice**

The Second Circuit has long held that when a *pro se* action is dismissed on the pleadings, the plaintiff should be given the opportunity to amend at least once if the complaint gives "any indication" that a valid claim may be stated.  <u>Frasier v. Gen. Elec. Co.</u>, 930 F.2d 1004, 1007-09 (2d Cir. 1991).

Where a *pro se* complaint is deficient, a court should look closely to determine whether the facts alleged would support a different legal theory from that which plaintiff is claiming and should allow plaintiff to amend his complaint to plead missing elements.  <u>Frasier</u>, 930 F.2d at 1008.  Although the decision whether to grant leave to amend is within the discretion of the district court, "refusal to grant leave to amend must be based on a valid ground." <u>Ronzani v. Sanofi S.A.</u>, 899 F.2d 195, 198 (2d Cir. 1990).  Where the possibility exists that the defect can be cured and there is no prejudice to defendants, leave to amend at least once should normally be granted as a matter of course.  <u>Oliver Schools, Inc. v. Foley</u>, 930 F.2d 248, 253 (2d Cir. 1991).

Here, with the exception of the following claims: (1) the Eighth Amendment conditions of confinement claim against Defendants Fischer, Elfeldt, Smith, Rudder, Fitchett, McCullough, Chipperino, Townley, and Bode regarding the contaminated water supply at Shawangunk and (2) the First Amendment Establishment Claim against Defendants Fischer, Elfeldt, Smith, Andrews, Rudder, Fitchett, McCullough, Chipperino, Townley, and Bode, this Court is dismissing the Complaint in its

entirety for the reasons set forth above.  As to Plaintiffs' claims challenging SOMA, some are dismissed without prejudice and some are dismissed with prejudice.[20]  Because the problem with some of the claims is "substantive," such that "[b]etter pleading will not cure it", see Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000), the following claims are dismissed with prejudice: (1) Plaintiffs' claims that are barred by the Donhauser Settlement Agreement; (2) the Fourteenth Amendment due process claims relating to denial of parole, denial of participation in the Family Reunion Program, prison of choice, and sex offender classification; and (3) the Eighth Amendment claims alleging that Plaintiffs were subjected to cruel and unusual punishment by their placement in the SOCTP and because they were verbally threatened and harassed.  The remaining claims are dismissed without prejudice because it is possible that Plaintiffs could amend their Complaint to plead missing elements that would state a cognizable claim under § 1983.

## IV.    CONCLUSION

Based on the above discussion, it is hereby

**ORDERED** that Defendants' motion to dismiss Plaintiffs' Complaint (Dkt. No. 115) is **GRANTED in part and DENIED in part** consistent with this opinion; and it is further

**ORDERED** that, after a review of the complaint in conjunction with Defendants' motion to dismiss and a *sua sponte* review pursuant to 28 U.S.C. §§ 1915(e) and 1915A, all of Plaintiffs claims are **DISMISSED with the exception of the following claims**:

(1)  Plaintiffs' Eighth Amendment claim against Defendants Fischer, Elfeldt, Smith, Rudder, Fitchett, McCullough, Chiapperino, Townley and Bode concerning the contaminated water

---

[20]   The claims are dismissed without prejudice to the extent that the claims were found to be not ripe.  To the extent that the claims were found to be moot, those claims are dismissed with prejudice.

supply at Shawangunk; and

(2)  Plaintiffs' First Amendment Establishment Clause claim against Defendants Fischer, Elfeldt,

Smith, Andrews, Rudder, Fitchett, McCullough, Chiapperino, Townley and Bode; and it is

further

**ORDERED** that all Defendants **except for** Fischer, Elfeldt, Smith, Andrews, Rudder, Fitchett,

McCullough, Chiapperino, Townley and Bode are **DISMISSED**; and it is further

**ORDERED** that Defendants Fischer, Elfeldt, Smith, Andrews, Rudder, Fitchett, McCullough,

Chiapperino, Townley and Bode file an answer to the remaining portions of the Complaint within the

time provided for by the Federal Rules of Civil Procedure; and it is further

**ORDERED** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties.

**IT IS SO ORDERED**.

DATED:         December 08, 2010
               Albany, New York

Lawrence E. Kahn
U.S. District Judge

43